**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| AVANDE, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>        v.<br><br>SHAWN EVANS and DC RISK SOLUTIONS, INC.,<br><br>        Defendants. | C.A. No. 2018-0203-AGB |

**ACCOUNTING JUDGMENT ORDER**

WHEREAS:

A.     On August 13, 2019, the court issued a post-trial Memorandum Opinion that adjudicated claims Avande, Inc. ("Avande" or the "Company") asserted against Shawn Evans ("Evans") and DC Risk Solutions, Inc. ("DC Risk"), an entity wholly-owned by Evans, (together, "Defendants") concerning three categories of transactions.[1]  The first two categories concerned (1) $4,691,097 of expenses that Avande contended the Internal Revenue Service could disallow as deductible business expenses (the "Challenged Amount") and (2) $235,845.83 of payments Avande made to DC Risk before Evans was terminated as Avande's Chief Executive Officer on February 15, 2018 (the "DC Risk Transactions").  For the reasons

---

[1] *Avande, Inc. v. Evans*, 2019 WL 3800168, at *7 (Del. Ch. Aug. 13, 2019).

explained in the Memorandum Opinion, the court denied Avande's request for an accounting with respect to the first category, the Challenged Amount, but granted its request for an accounting with respect to the second category, the DC Risk Transactions.

B.     On September 4, 2019, the court entered a Judgment Order, which it amended on September 18, 2019, that, among things, awarded Avande an equitable accounting with respect to the DC Risk Transactions (the "Accounting").[2]   In entering the Judgment Order, the court explained to the parties that the Accounting would examine "*all payments Avande made to DC Risk* before Evans' termination as CEO (*but only those amounts*)."[3]

C.     After entry of the Judgment Order, Avande and Defendants each proposed two candidates to perform the Accounting.[4]

D.     On September 27, 2019, the court entered an Order Governing Accounting Procedure, which explained the procedure for the Accounting; selected one of the candidates Avande proposed (Theodore F. Martens) to perform the Accounting (the "Accountant"); and required the Accountant to file a report "identifying, consistent with this Court's Memorandum Opinion, any and all DC

---

[2] Dkt. 196 ("Judgment Order"); Dkt. 198.

[3] Dkt. 196 (cover letter accompanying Judgment Order) (emphasis added).

[4] Dkt. 199; Dkt. 200.

2

Risk Transactions that were unfair under the standards of Delaware law for self-interested transactions."[5]

E.      On February 7, 2020, the Accountant filed his report (the "Report"), which found a total of $43,687.77 of unfair payments.[6]

F.      In March and May 2020, Defendants and Avande filed their responses to the Report.[7]

**NOW, THEREFORE**, the court having considered the parties' submissions, **IT IS HEREBY ORDERED**, this 14th day of September, 2020, as follows:

1.      "The purpose of the Accounting [was] to determine to what extent, if any, the DC Risk Transactions were unfair under the standards of Delaware law for self-interested transactions."[8]  Where, as here, the fiduciary's (Evans') "loyalty has been called into question, the burden shifts to the fiduciar[y] to demonstrate the 'entire fairness' of the transaction."[9]  As such, the Defendants had the burden of establishing  "that [each] transaction was the product of both fair dealing *and* fair

---

[5] Dkt. 201 ("Accounting Order") ¶ 7.

[6] Dkt. 204 ("Report") at 8.

[7] Defs.' Letter dated Mar. 6, 2020 ("Defs.' Letter") (Dkt. 205); Pl.'s Reply (Dkt. 210).

[8] Judgment Order ¶ 3.

[9] *Oliver v. Boston Univ.*, 2006 WL 1064169, at *18 (Del. Ch. Apr. 14, 2006) (internal quotation marks omitted).

price."[10]  "[T]he test for fairness is not a bifurcated one as between fair dealing and price.  All aspects of the issue must be examined as a whole since the question is one of entire fairness."[11]

2.     As detailed in the Report, the Accountant reviewed DC Risk Transactions falling into four categories:  (i) charges for bookkeeping services that a DC Risk employee (Susan Omran) performed for Avande, (ii) commission payments DC Risk received for brokering insurance for Avande, (iii) payments Avande made to DC Risk concerning a $75,000 loan DC Risk made to Avande, and (iv) expense reimbursements Avande paid to DC Risk.[12]  As noted below, the Accountant also examined a few payments made to or for the benefit of Evans individually that were not part of the DC Risk Transactions.  The Accountant determined that Avande made unfair payments to DC Risk totaling $43,687.77.[13] The largest amount concerned bookkeeping charges.  Specifically, the Accountant

---

[10] *In re Trados Inc. S'holder Litig.*, 73 A.3d 17, 44 (Del. Ch. 2013) (internal quotation marks omitted).

[11] *Weinberger v. UOP, Inc.*, 457 A.2d 701, 711 (Del. 1983).

[12] Report at 3-7.

[13] *Id.* at 8.

found that $39,384.02 out of a total of $104,844.50 that Avande paid DC Risk for bookkeeping services provided from 2013 to 2018 was unfair.[14]

3.    In their response to the Report, Defendants pointed out purported "structural deficiencies" in the Report but elected to "not contest the conclusions" of the Report.[15]

4.    In its response to the Report, Avande asserted two objections for which it seeks to "be awarded additional damages of $471,196.37."[16]   First, with respect to bookkeeping services, Avande asks the court to reject the Accountant's findings and award it the full amount ($104,844.50) Avande paid DC Risk for bookkeeping services over a five-year period.[17]   Second, Avande requests that it be awarded $366,321.92 for "expenses charged on Evans' credit cards and paid by Avande" that the Accountant did not examine in the Report.[18]   Avande also seeks an order requiring "Defendants to reimburse Avande its fees and costs incurred in connection with the Accounting."[19]   The court addresses these three issues, in turn, below.

---

[14] *Id.* at 2-5, 10-12 (Schedule 1).  Avande received 44 invoices for bookkeeping charges totaling $107,224.03 but it did not pay one of those invoices for $2,379.53, for which the Accountant provided a credit.  *Id.* at 4 & n.3, 11.

[15] Defs.' Letter at 4.

[16] Pl.'s Reply at 22.

[17] *Id.*

[18] *Id.*

[19] *Id.* at 29.

**Bookkeeping Charges**

5.      The Accountant concluded that $39,384.02 or approximately 38% of a total of $104,844.50 of payments Avande made to DC Risk for bookkeeping services from January 1, 2013 to February 15, 2018 was unfair.[20]  In performing his analysis, the Accountant examined the trial record (documents and testimony), obtained additional documents from the parties outside the trial record, and received written responses to questions propounded to the parties as well as rebuttals to those responses.[21]  Although the Accountant did not receive backup documentation for each of the charges on the 44 invoices that DC Risk issued for bookkeeping services during the relevant period, the Accountant methodically examined the charges month-by-month and made adjustments he deemed appropriate based on the information available to him.[22]  More specifically, the Accountant (i) reduced the number of hours appropriate for payment for the months he did not have satisfactory backup documentation and (ii) reduced the hourly rates DC Risk charged (ranging from $35 to $40 per hour) to rates that ranged from $30.50 to $33.07 per hour.[23]

6.      Avande does not question any of the specific adjustments the Accountant made.  Avande asserts instead that "*all of the sums* Evans caused Avande

---

[20] Report at 8.

[21] *Id.* at 3-4.

[22] *See id.*  at 4-5.

[23] *Id.* at 3-4, 13 (Schedule 2).

to pay to DC Risk for Omran's bookkeeping services should be held to be unfair and repaid to the Company as damages" because the Accountant "drew inferences in Defendants' favor when Defendants' inability to produce relevant evidence should have been deemed a failure to carry their burden of proving entire fairness."[24]

7. The court declines to award damages in such an all-or-nothing manner. In my view, it would be inequitable to award Avande damages for all of the bookkeeping charges it paid DC Risk over a five-year period when it is indisputable that DC Risk provided substantial bookkeeping services to the Company during this period.

8. Avande submitted a Declaration from Rick Evans of the firm Serotta Maddocks Evans & Co., CPAs, attesting that the "most objective evidence of Ms. Omran's bookkeeping time for Avande" is garnered from Avande's QuickBooks accounting system because "QuickBooks kept an electronic record of the times when Ms. Omran logged in and out of Avande's accounting system and her activities while logged in."[25] Focusing on three of the five years at issue, Rick Evans calculated that "Ms. Omran was logged in the QuickBooks accounting system for a total of

---

[24] Pl.'s Reply at 26-27 (emphasis added).

[25] *Id.* Ex. K ("Evans Decl.") ¶ 4 (citing Evans Decl., Ex. 2).

7

approximately 1,059 hours."[26]  Thus, Avande itself acknowledges that DC Risk performed substantial bookkeeping services for the Company.

9.     The independence and competence of the Accountant, who Avande recommended to the court, is unquestioned.  Although the Accountant did not have backup documentation for every bookkeeping charge, his methodology was thorough, the assumptions he made were reasonable, and the ultimate conclusion he reached to apply a reduction of approximately 38% to the bookkeeping charges incurred is fair in my view.  Accordingly, the court overrules Avande's first objection and will adopt the Accountant's findings concerning the DC Risk charges for bookkeeping services.

**Credit Card Charges**

10.     Avande's second objection concerns, as Avande puts it, "$366,321.92 in payments for credit card charges made by Evans on [Avande's] cards assigned exclusively to him," which "Defendants refused to produce [supporting documentation for] on the improper ground that Avande's credit cards 'do not fall under the scope of the mandate of the accounting.'"[27]  The court overrules this objection because it agrees with Defendants that Evans' credit card expenditures were outside the scope of the Accounting.

---

[26] *Id.* ¶ 5.

[27] Pl.'s Reply at 23, 28 (citations omitted).

11. As explained in the Memorandum Opinion, the court denied Avande's request for an accounting of the Challenged Amount—consisting of $4,691,097 of expenses—"because Avande failed to make a *prima facie* showing based on substantial evidence [as required under this court's precedents] that the expenditures within the Challenged Amount constitute self-interested transactions involving Evans."[28] Critically, as further explained in the Memorandum Opinion, the Challenged Amount included "approximately $700,000" of charges on American Express and Chase Card Services credit cards for which, unlike in cases where this court has ordered an accounting, "Avande made no effort to isolate charges attributable to Evans, or to determine from the face of the credit card statements whether the charges appeared to be business-related or personal in nature."[29] Accordingly, the court concluded in the Memorandum Opinion that "it would be inappropriate to shift to Evans the burden of demonstrating the fairness of each of those expenditures *or to order an accounting of them*."[30]

12. The transactions for which Avande did make the *prima facie* showing necessary to obtain the remedy of an accounting and that fall within the scope of the

---

[28] *Avande*, 2019 WL 3800168, at *14.

[29] *Id.* at *13 & n.144.

[30] *Id.* at *14 (emphasis added).

9

Accounting that was ordered consist of *payments Avande made to DC Risk.* As explained in the Memorandum Opinion:

> Avande's second category of alleged damages consists of $235,845.83 of payments that Avande made to DC Risk, which is wholly-owned by Evans. According to Avande, this amount falls outside of the Challenged Amount and includes expenses for "Bookkeeping, Travel reimbursement, Microsoft office & adobe reimbursement."
>
> Evans does not contest that Avande paid $235,845.83 to DC Risk, and both parties focus on two types of expenditures when discussing the payments Avande made to DC Risk: charges for (i) bookkeeping services that DC Risk employee Susan Omran performed for Avande and (ii) brokerage commissions for insurance policies DC Risk placed for Avande. DC Risk billed Omran's services to Avande on an hourly basis at $35 or $40 per hour, which Evans claims was below the market rate in the San Francisco. According to invoices in the record, DC Risk charged Avande a total of $89,947.50 for bookkeeping services provided from December 2013 to February 2018, although some invoices appear to be missing. The record also contains DC Risk invoices for insurance policies ($28,587.11) and travel reimbursement ($1,510.34). Kato knew that DC Risk purchased insurance policies for Avande, but claims he was unaware that DC Risk was earning brokerage commissions for doing so. The total amount of DC Risk invoices in the record appears to be approximately $120,000.[31]

After issuance of the Memorandum Opinion, in a cover letter to counsel accompanying the Judgment Order, the court clarified that it did not intend to limit the Accountant's review to "$235,845.83" in alleged payments to DC Risk if there

---

[31] *Avande*, 2019 WL 3800168, at *16-17 (citations omitted).

10

were more of those payments, but made clear that the Accounting only would involve *payments Avande made to DC Risk*—not to or for Evans individually.[32]

13.    In its response to the Report, Avande submitted a spreadsheet listing approximately $645,000 of charges on the Company's American Express and Chase Card Services credit cards from 2013 to 2018 and isolating the amount of those charges that were made *by Evans*.[33]  Critically, these are the same credit card charges that were part of the Challenged Amount for which Avande failed to make the showing necessary to obtain an accounting and are not part of the DC Risk Transactions for which the Accounting was ordered.[34]

14.    In requesting an award of $366,321.92 for credit card charges allegedly incurred by Evans, Avande ask the court to consider evidence it failed to provide at trial and to re-litigate an issue on which it lost at trial, *i.e.*, its request for an accounting of the Challenged Amount.  This is completely improper.  The scope of the Accounting was limited to the DC Risk Transactions, which concern payments Avande made to DC Risk and did not include charges Evans made in his own name

---

[32] Dkt. 196 ("[T]he Accountant should be able to examine all payments Avande made to DC Risk before Evans' termination as CEO (but only those payments).").

[33] Pl.'s Reply at 23; *id.* Ex. J (spreadsheet listing credit card charges).

[34] *See* JX 396 (itemizing $235,845.83 of expenses for DC Risk Solutions separately from $419,552.21 of expenses on American Express credit cards and $281,410.61 of expenses on Chase Card Services credit cards).

11

on the Company's credit cards. Accordingly, the court overrules Avande's second objection.[35]

**Request for Attorneys' Fees and Expenses**

15. Avande asks the court to "order Defendants to reimburse Avande its fees and costs incurred in connection with the Accounting" due to "Defendants' bad faith conduct and abusive litigation tactics."[36] Avande specifically points to Defendants' failure to produce before trial nine handwritten notebooks Omran maintained that Defendants provided to the Accountant to support the amount DC Risk charged Avande for bookkeeping services. As Avande explained in its brief:

> During trial, in response to the Court's direct questions about the evidence of Omran's time-keeping records, Defendants' counsel *did not disclose the notebooks' existence*, even though Defendants' counsel knew about them days earlier and even instructed Omran to transport them to Delaware. . . .

> Instead, Defendants only decided to reveal Omran's notebooks *after trial*, in response to Martens' inquiries, without affording Avande an opportunity to test their reliability through discovery. Avande was unaware of the notebooks' existence until a November 7, 2019 telephone conference with Martens, when Defendants' counsel informed the Company's counsel for the first time that they would be produced in connection with the Accounting to support DC Risk's fees charged to Avande. Defendants then delivered nine original notebooks to [the Accountant's] New York City offices without providing copies

---

[35] The court notes that the Accountant deemed unfair $1,845.10 in credit card expenses that appeared "personal in nature" to Evans. Report at 8. Although these transactions fell outside the scope of the Accounting, the court will not reduce the Accountant's findings by this amount given Defendants' lack of objection to the Accountant's conclusions.

[36] Pl.'s Reply at 29.

to Avande, forcing the Company, at its own expense, to travel to [New York City] for the purposes of inspecting the notebooks and making copies.[37]

16.     Avande submitted an email from Defendants' counsel reflecting that they were aware of the notebooks before trial began on February 20, 2019.[38] The Company also submitted emails reflecting that Defendants sent the notebooks to the Accountant without providing copies to Avande.[39]

17.     Defendants' failure to produce Omran's notebooks before trial is without excuse and egregious.  There is no place in our Bar for counsel to intentionally conceal relevant evidence that has been sought in discovery.  The relief Avande seeks based on this incident, however, is not warranted in my view.  Under the Judgment Order, Defendants are required to pay "all the professional fees and expenses charged by the Accountant."[40]  Thus, Avande has not been impacted by any additional time or effort the Accountant may have incurred to address this new evidence.  Avande itself, moreover, unduly complicated the Accounting by injecting

---

[37] *Id.* at 32-33 (citations omitted).

[38] *Id.* Ex. M, at 1 (Feb. 19, 2019 e-mail from Defendants' counsel requesting Omran bring the notebooks with her to Delaware because they "may want to produce them").

[39] Pl.'s Reply, Ex. D, at 1 (Nov. 14, 2019 e-mail from Defendants' counsel to the Accountant asking where to send the notebooks); *id.* Ex. F, at 1-2 (e-mail chain showing Defendants' counsel mailed the notebooks directly to the Accountant without providing copies to Plaintiff's counsel and Plaintiff's counsel raising concerns about the notebooks, requesting photocopies, and arranging a time with the Accountant to examine the notebooks in New York City).

[40] Judgment Order ¶ 3(c).

an issue into the process that was outside the scope of the Accounting. Accordingly, the court denies Avande's request for reimbursement of its fees and costs incurred in connection with the Accounting. This denial is without prejudice to Avande's right to argue that Defendants' misconduct should be considered in the context of any request for indemnification with respect to the matters that were the subject of this action.

\* \* \* \* \*

18. In sum, Defendants are jointly and severally liable to Avande for damages in the amount determined by the Accountant ($43,687.77) plus pre- and post-judgment interest at the Delaware legal rate, compounded quarterly.[41] The Report details the unfair amounts by year. Interest shall be calculated for the years 2014 through 2017 as if the total amount for each year was incurred on the last day of each year.[42] The parties are directed to confer and to submit an implementing order within five business days of this order. The order should reflect that any claim for indemnification related to this action must be sought in a separate action.



*/s/ Andre G. Bouchard*
Chancellor

---

[41] *See Avande*, 2019 WL 380016, at \*18.

[42] The Accountant's determinations for 2013 and 2018 provide small credits that should be disregarded for purposes of the interest calculation. Report at 11-12.